## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA SYRYKH and OKSANA KUZNIETSOVA,<br><br>                Plaintiffs,<br><br>      v.<br><br>TETYANA SHEVCHENKO, VASYL FURSOV, SELLER ONLINE, LLC, SHIP2C, LLC and JOHN/JANE/ENTITY DOES 1-5,<br>                Defendants. | Case No. 2:25-cv-7338<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT</u>

NOW COME plaintiffs, Anna Syrykh ("Syrykh") and Oksana Kuznietsova ("Kuznietsova"; and together with Syrykh, the "Plaintiffs"), by and through their undersigned counsel, to file this Complaint against the defendants, Tetyana Shevchenko ("Shevchenko"), Vasyl Fursov ("Fursov"), Seller Online, LLC ("Seller Online"), Ship2C, LLC ("Ship2C"), and John/Jane/Entity Does 1-5 ("Doe Defendants") (collectively, the "Defendants"), and in support thereof aver as follows:

### <u>THE PARTIES</u>

1.      Plaintiff Syrykh is an adult individual and Pennsylvania resident.

2.      Plaintiff Kuznietsova is an adult individual and Pennsylvania resident. Kuznietsova and Syrykh are married.

3.      Upon information and belief, Defendant, Tetyana Shevchenko ("Shevchenko"), is an adult individual and New Jersey resident.

4.      Upon information and belief, Defendant, Vasyl Fursov ("Fursov"), is an adult individual and New Jersey resident. Upon information and belief, Shevchenko and Fursov are married.

5.    Upon information and belief, Defendant, Seller Online, LLC ("Seller Online"), is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.

6.    Upon information and belief, Defendant, Ship2C, LLC ("Ship2C"; and together with Seller Online, the "Entity Defendants"), is a New Jersey limited liability company. Upon information and belief, Shevchenko and Fursov purport to own and/or control the Entity Defendants.

7.    Upon information and belief, Doe Defendants are persons and/or entities, including accountant(s) and/or other professional(s), who have conspired with and/or aided and abetted the misconduct of Shevchenko, Fursov, and Entity Defendant(s) in the misconduct more fully described below.[1]

## JURISDICTION AND VENUE

8.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as if set forth at length herein.

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, including 26 U.S.C. § 7434 (civil damages for filing fraudulent information returns), 18 U.S.C. § 1595 (civil remedy for forced labor under the Trafficking Victims Protection Act), and 18 U.S.C. § 1964(c) (civil RICO).

10.    This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

---

[1] Plaintiffs will seek leave to amend this Complaint to identify the Doe Defendants by their true names once such information is ascertained through discovery. Additionally, in light of a pending state-court action (Bucks County, PA Case. No. 2024-04582) between Kuznietsova and her affiliated company, Atlantic Logistics Solutions, Inc. ("ALS"), and Shevchenko, Fursov, and Seller Online, relating to similar and/or overlapping facts, Plaintiffs will seek to consolidate all such related federal and non-federal claims in this action for judicial economy.

11.    This Court has personal jurisdiction over all Defendants because they have sufficient minimum contacts with Pennsylvania, including regularly conducting business in this Commonwealth, and/or because a substantial part of the events giving rise to these claims occurred in Pennsylvania.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant Seller Online is a Pennsylvania limited liability company that conducts business in this District.

## FACTUAL BACKGROUND

### The Business of Seller Online and ALS

13.    Kuznietsova and Shevchenko were acquainted from university in Ukraine.

14.    At all material times hereto, Kuznietsova resided in the United States and was married to Syrykh.

15.    In December 2023, Shevchenko relocated to the United States after the war between Russia and Ukraine started in Europe. Prior to that, she and her husband, Fursov, resided in Ukraine.

16.    Upon information and belief, Shevchenko was engaged in the online fulfillment business since approximately 2000.

17.    In or about February 2019, Shevchenko and Syrykh agreed to become business partners to own and operate a U.S.-based online fulfillment business, and as a result, formed Seller Online with Syrykh owning 51% and Shevchenko owning 49%.

18.    Unbeknownst to Syrykh, Shevchenko allowed a third party in Ukraine to sell prohibited medications and process payments through Seller Online's PayPal account linked to

Syrykh, which resulted in the flagging and closure of the PayPal accounts of Seller Online and Syrykh to their detriment.

19.    In September 2019, due to Shevchenko's misconduct and the resulting closure of the PayPal accounts of Seller Online and Syrykh, Kuznietsova agreed to incorporate ALS to provide services to Seller Online with the knowledge and consent of Syrykh and Shevchenko.

20.    Shortly after its incorporation, ALS and Seller Online entered into an oral agreement for ALS to provide certain services to Seller Online and/or its business, including PayPal payment processing services, in exchange for agreed-upon consideration. Such consideration included, but was not limited to, compensation to ALS sufficient to cover all of its operating costs and expenses (including, without limitation, wages and other sums to Kuznietsova and other staff, taxes of ALS and Kuznietsova, legal and accounting costs, and other debts, obligations and liabilities) and a promise to indemnify, defend and hold harmless ALS, Kuznietsova and Syrykh for all harm and loss suffered or incurred by them in connection with such business arrangement ("SO-ALS Service Agreement").

21.    The SO-ALS Service Agreement permitted ALS to retain, hold, and apply the payments it received/processed on account of Seller Online to all consideration and other sums payable to ALS, Kuznietsova, and Syrykh under the SO-ALS Service Agreement, including, without limitation, the sum of any tax advances/reimbursements and the costs and expenses of any legal actions, proceedings, and disputes.

22.    In conjunction with the formation of Seller Online, ALS and the SO-ALS Service Agreement, Shevchenko represented and warranted to Syrykh that Shevchenko's Ukraine-based online fulfillment business was operated lawfully and profitably, and that Shevchenko would ensure that the Seller Online/ALS business and SO-ALS Service Agreement arrangement would

be operated and conducted lawfully and profitably for the benefit of Syrykh, Kuznietsova, and ALS.

23.    Plaintiffs reasonably relied on such promises, representations, and warranties of such Defendants.

24.    Syrykh and Shevchenko agreed to pay their respective personal taxes from the Seller Online business through their respective share of undistributed profits held in the bank account of Seller Online.

25.    Unbeknownst to Plaintiffs, the Defendants planned and schemed to defraud and abuse Plaintiffs in order to achieve their illegal goals, including, without limitation, securing disproportionate profits and benefits at the expense of Plaintiffs, as more fully described herein.

<u>**Conversion and Diversion of Funds**</u>

26.    Unbeknownst to Plaintiffs at the time, Shevchenko and Fursov conspired to, upon information and belief did in fact, convert and direct the funds of Plaintiff(s).

27.    Upon information and belief, and unbeknownst to Plaintiffs at the time, Shevchenko and Fursov fraudulently induced Seller Online and/or ALS to pay funds (some of which were personal funds of Kuznietsova and/or Syrykh being held in the accounts of Seller Online and/or ALS) to third parties in China (see e.g. **Exhibit A** hereto) and/or Ukraine by misrepresenting to Plaintiff(s) that such invoices, transactions, and payments were valid and bona fide when they were not, thus causing the diversion and conversion of funds belonging to Plaintiff(s) to Shevchenko and Fursov to the detriment of Plaintiffs.

28.    When Plaintiff(s) questioned some of the suspicious invoices submitted by Shevchenko and Fursov, including those not listing Seller Online, they lied and stated that they were valid or that they would resolve the invoicing issue in China and/or Ukraine, but, upon

information and belief, converted and diverted such funds for themselves.

## Misuse of Personal and Other Information and Accounts

29.     Upon information and belief, and unbeknownst to Plaintiffs at the time, Shevchenko and Fursov converted and misused the personally identifiable and account information of Seller Online, ALS, Kuznietsova and/or Syrykh, including tax identification numbers/social security numbers, passport information, and payment processing accounts such as PayPal and Payoneer.

30.     Upon information and belief, Shevchenko and Fursov misused this information to create accounts in Ukraine and/or elsewhere clandestinely.

31.     Upon information and belief, and unbeknownst to Plaintiffs at the time, Shevchenko and Fursov allowed third parties to misuse this information for improper payment processing and/or other purposes from which Shevchenko and Fursov improperly benefited at the expense of Plaintiffs.

32.     By way of example and not limitation, on August 9, 2024, ALS received an email from the SR IP Law Firm in connection with a counterfeiting lawsuit, stating: "***Your PayPal account is associated with a defendant in a counterfeiting case filed in federal court in Florida***. See attached complaint. ***This defendant has an Etsy store (Heritage Garage) that is apparently using the PayPal account to collect payments. We need to understand your relationship to this defendant store, what services you provide them, and why Etsy has linked your PayPal account to this defendant.***" See **Exhibit B** hereto (emphasis added).

33.     Upon information and belief, Shevchenko's and Fursov's misuse of such information and accounts caused Seller Online and Syrykh to be flagged and/or banned from third-party sites and/or platforms.

34.     Upon information and belief, Shevchenko's and/or Fursov's misconduct caused TD Bank to terminate its banking relationship with Seller Online, which disrupted business operations and forced it to move to Citizens Bank.

35.     Upon information and belief, Shevchenko's and/or Fursov's misconduct caused Seller Online and ALS to expend time and resources to deal with lawsuits, investigations, and other operational disruptions to the detriment of Plaintiffs.

<u>**Scheme to Commit Immigration Fraud**</u>

36.     Upon information and belief, Shevchenko and Fursov schemed to fraudulently relocate and secure residency in the United States, presumably so that Fursov could dodge the Ukrainian draft and so that Shevchenko and Fursov could squeeze out Kuznietsova and Syrykh from the Seller Online/ALS businesses for little or no consideration.

37.     As part of this scheme, upon information and belief, Shevchenko obtained false disability status in Ukraine when she was not disabled; falsely listed Fursov as her caregiver; and crossed the Ukrainian border into Europe with a plan to ultimately relocate to the United States under false pretenses.

38.     Since Seller Online lacked the necessary number of employees for Shevchenko and Fursov to secure a U.S. business visa, Shevchenko and Fursov forced a reallocation of employees from ALS to Seller Online through, *inter alia*, threats and intimidation. After they entered the United States, Shevchenko and Fursov terminated two of the employees, evidencing that they only hired them for immigration purposes, which disrupted the operations of ALS.

39.     Upon information and belief, Shevchenko and Fursov executed a sale agreement promising to acquire 2% of the Seller Online membership interest from Syrykh for $192,000, which, upon information and belief, was executed under false pretenses, never intending to

consummate the sale with Syrykh. Instead, upon information and belief, Shevchenko and Fursov used this 2% interest sale agreement to deceive U.S. immigration authorities into believing that Shevchenko was a majority owner of Seller Online when she was not. See **Exhibit C** hereto.

40.     Shevchenko and Fursov, through harassment, coercion, and intimidation, forced Seller Online, and by extension Syrykh, and others to be unwilling participants in their immigration scheme to their detriment.

### Harassment, Intimidation, and Coercion of Kuznietsova and Her Spouse

41.      Plaintiffs objected on numerous occasions to the unlawful and/or improper conduct of Defendants, more fully described herein, but to no avail.

42.     Shevchenko and Fursov repeatedly threatened, bullied, intimidated, coerced, and harassed Kuznietsova and Syrykh to force silence and complicity, causing intentional infliction of emotional distress and other harm to Kuznietsova and Syrykh.

43.     Shevchenko and Fursov repeatedly threatened Kuznietsova that she and Syrykh would "lose everything" if Kuznietsova and Syrykh would not comply with Shevchenko and Fursov's demands.

44.     Shevchenko and Fursov admitted to Kuznietsova that they were collecting incriminating information about Kuznietsova and Syrykh to blackmail them with if either of them refused to comply with their demands.

45.     Shevchenko and Fursov repeatedly attempted to coerce Kuznietsova into providing personal information about Syrykh, which, presumably, they planned to use in their intimidation and blackmail scheme against Kuznietsova and Syrykh.

46.     On one occasion, Shevchenko showed Kuznietsova a letter that Shevchenko prepared on Seller Online's letterhead and claimed to have sent to family and/or others, stating,

"If anything happens to me, I ask that Anna Syrykh be held responsible." When Kuznietsova questioned Shevchenko's improper motives, Shevchenko responded that she did it "just in case."

47.    Shevchenko attempted to ruin Kuznietsova's marriage to Syrykh by falsely stating or implying that Syrykh was being unfaithful.

48.    Shevchenko and Fursov repeatedly attempted to coerce Kuznietsova into opening clandestine bank accounts not known to Syrykh, presumably so that Shevchenko and Fursov could either commandeer them or use them to divide Kuznietsova and Syrykh for their self-serving purposes.

49.    Shevchenko and Fursov pressured Kuznietsova to sign a non-disclosure agreement about their illicit conduct, but Kuznietsova refused.

50.    Shevchenko and Fursov, through their statements and actions, made it clear that they had ties to the criminal underworld, which intentionally intimidated Kuznietsova and Syrykh.

51.    Shevchenko and Fursov constantly depleted the cash on hand of Seller Online to, *inter alia*, make Kuznietsova and Syrykh worry and fear that there would be insufficient funds to pay Syrykh's tax liability arising from Seller Online's business; Shevchenko and Fursov used this fear tactic against Kuznietsova and Syrykh to coerce them to comply with Shevchenko's and Fursov's improper demands.

52.    While Seller Online was generating substantial income and Syrykh was incurring substantial "book" profits, she never actually received her 51% profit share which would have become a marital asset shared by Kuznietsova and Syrykh to which she was entitled because of the improper conversion and diversion activities of Shevchenko and Fursov.

53.    While Shevchenko and Fursov made it appear that Syrykh and Kuznietsova were running Seller Online, Shevchenko and Fursov were actually in control behind the scenes and were

masterminding the improper conduct described herein.

54.     Knowing that Kuznietsova had heart issues and would soon undergo open heart surgery, Shevchenko and Fursov increased their harassment, intimidation, and coercion of Kuznietsova, causing her anxiety, stress, and other psychological and/or physical harm.

55.     Shevchenko and Fursov repeatedly complained that Seller Online was paying too much in taxes. Shevchenko and Fursov demanded that Seller Online engage in questionable tax-avoidance practices, like using sham invoices to reduce taxable income, but Syrykh and the then-accountant refused. In retaliation, Shevchenko and Fursov terminated the then-accountant in favor of a new accountant who was more willing to comply with their improper demands.

**Freeze-out of Syrykh from the Seller Online Business**

56.     Upon information and belief, and unbeknownst to Syrykh at the time, Shevchenko and Fursov schemed to freeze out Syrykh from the Seller Online/ALS online fulfillment business once they relocated to the United States.

57.     Shevchenko and Fursov employed various tactics to convert the funds and rights of Syrykh, including her entitlement to 51% of the Seller Online profits and the right to exercise voting control of Seller Online, as more fully described herein.

58.     Shevchenko and Fursov forced Seller Online to acquire real estate worth millions, presumably to reduce cash available for distribution, while keeping these valuable assets available for when Shevchenko and Fursov would relocate to the United States and freeze out Syrykh from the Seller Online business.

59.     Before December 2023, Syrykh and Kuznietsova voiced numerous concerns and repeatedly objected to the misconduct of Shevchenko and Fursov, but to no avail.

60.     In December 2023, Shevchenko and Fursov moved to the United States.

61.     After relocating to the United States, Shevchenko and Fursov exploited their

coercive control over Syrykh and Kuznietsova by demanding that Syrykh sell her 51% ownership stake in Seller Online for substantially less than fair market value, threatening continued forced labor and servitude if she refused to comply with their demands.

62.    On November 30, 2023, Seller Online had a net asset value of approximately $4,231,362 based on its November 2023 balance sheet, meaning that Syrykh's 51% membership interest would be worth at least $2,115,681. See **Exhibit D** hereto.

63.    However, Shevchenko and Fursov forced Syrykh to sign an agreement to sell her 51% interest for $700,000, grossly below fair market value.

64.    The parties agreed that the sale agreement would provide for Shevchenko and Fursov to fully and generally release and indemnify Syrykh for any claims and conduct relating to Defendants' business and activities.

65.    Syrykh grudgingly accepted these terms, believing that she and Kuznietsova could finally live in peace, free from the intimidation, harassment, and coercion of Shevchenko and Fursov.

66.    Seller Online's accountant drew up the initial draft of the sale agreement.

67.    Upon information and belief, Shevchenko, Fursov, and their attorney fraudulently modified the draft sale agreement, materially altering its terms without disclosure to eliminate the agreed-upon release and indemnification provisions. They then exploited Syrykh's vulnerable position to coerce her signature on the materially altered agreement under extreme duress, deliberately preventing her from obtaining independent legal counsel and review of the modified terms, thereby rendering the agreement void or voidable under Pennsylvania contract and/or other applicable law, including, *inter alia*, under the principles of fraud and/or duress.

68.    On or about December 28, 2023, the parties executed an agreement purporting to

transfer Syrykh's 51% membership interest in Seller Online to Shevchenko and Fursov. See **Exhibit E** hereto. However, as set forth more fully below, this agreement is void and/or voidable due to, *inter alia*, failure of consideration, fraud, duress, coercion, material breach, and/or mistake.

69.    Syrykh only later discovered that the agreed-upon release/indemnification terms in favor of Syrykh and Kuznietsova were missing and that the agreement did not reflect the release/indemnification bargain to which she agreed, albeit under duress and coercion.

70.    Moreover, Shevchenko and Fursov failed to fully and directly pay the entire $700,000 purchase price to Syrykh in accordance with the December 28, 2023 sale agreement. Specifically, Syrykh received no direct payment from Shevchenko and Fursov toward the purchase price, constituting a material breach and failure of consideration under applicable law.

71.    While Syrykh took certain pre-closing distributions to which she was entitled, such distributions did not discharge the obligation of Shevchenko and Fursov to pay the purchase price in full as required by the December 28, 2023 agreement, which they failed to do.

72.    Accordingly, the December 28, 2023 sale agreement is void ab initio and/or voidable at Syrykh's election due to, *inter alia*: (a) failure of consideration, (b) fraud in the inducement and fraud in the execution; (c) economic and/or other duress and coercion; (d) mutual mistake and/or unilateral mistake induced by Defendants' fraudulent conduct; (e) material breach by Defendants; and (f) unconscionability.

73.    Alternatively, the failure to pay the purchase price in full to Syrykh as required negates the 51% ownership transfer to Shevchenko and Fursov.

74.    Alternatively, further, Shevchenko and Fursov are indebted to Syrykh and/or Kuznietsova in an amount yet to be quantified, but well in excess of the amounts claimed to be owed to Shevchenko and Fursov in this action.

**Defendants' Fraudulent Amendment of Tax Returns**
**to Inflict Financial Harm on Syrykh**

75.     Syrykh, Shevchenko, and Seller Online agreed to retain certain profits of Seller Online in its bank account and issue payment from such bank account for Syrykh's and Shevchenko's personal income tax liability, including any such owed to federal, state, and local taxing authorities, associated with Seller Online's pass-through income.

76.     Such agreement, *inter alia*, required Seller Online to pay Syrykh's 2023 personal income tax liability associated with her ownership period in 2023.

77.     Such agreement was also confirmed in writing in Section 15 of the December 28, 2023 sale agreement, as evidenced by the following excerpt:

> Buyers hereby also agree that after their acquisition of the membership interest from Seller, and at an appropriate date to be separately agreed on by the parties, the LLC shall fully reimburse Seller for all federal and state income taxes paid and payable by Seller in her 2023 tax year arising exclusively out of the income allocable to her in connection with her ownership of the LLC membership interest in that year, as reflected on Seller's final Schedule K-1 issued by the LLC.

78.     In 2024, Shevchenko met with Seller Online's then accountant, prepared Seller Online's 2023 tax returns consistent with such agreement, filed such tax returns with applicable taxing authorities, and covered any personal income tax liability of Syrykh for the 2023 period in accordance with the parties' agreement.

79.     However, after a dispute arose between Plaintiffs and Defendants, Shevchenko, Fursov, and Seller Online, acting directly and/or indirectly through their accountants and/or other agents, conspired to harm Syrykh by clandestinely, fraudulently and without authorization amending Seller Online's 2023 tax returns and Syrykh's Schedule K-1 to allocate in excess of $455,000 of additional income to Syrykh without her knowledge, consent, or authorization as a member and without paying such additional tax liability of Syrykh as required by the parties'

agreement.

80.     Such conduct of Defendants violated applicable tax laws, rules, regulations, and the parties' agreement regarding tax allocation and payment.

81.     Syrykh only discovered such clandestine and improper 2023 tax return amendment in December 2025, as Shevchenko, Fursov, Seller Online and their new accountant failed to previously provide her notice of or seek her consent to such improper tax amendment.

82.     Syrykh estimates that this improper 2023 tax amendment will result in hundreds of thousands of dollars in personal tax liability, interest, and penalties, which is the responsibility of Seller Online to pay under the parties' agreement, but which was not paid on Syrykh's behalf due to the intentional misconduct of Defendants described herein.

83.     Upon information and belief, Shevchenko, Fursov, Seller Online and their new accountant conspired to make the clandestine and improper tax return amendments for 2023 and/or prior years to inflict devastating financial harm on the Plaintiffs.

84.     Due to the fraud, duress, coercion, mistake, and other unlawful and improper conduct of Defendants, any other agreements among the parties are void and/or voidable, at the election of Syrykh, due to, *inter alia*, the fraud, duress, coercion, mistake, and other unlawful and improper conduct of Defendants, as more fully described herein.

85.     The fraud, duress, coercion, harassment, intimidation, bullying, and other unlawful and improper conduct of Defendants, as more fully described herein, is outrageous, willful, wanton, and entitles Syrykh to punitive damages.

### COUNT I
### CIVIL DAMAGES FOR FRAUDULENT FILING
### OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434
### (Syrykh v. Shevchenko, Fursov, Seller Online, et al.)

86.     Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully

herein.

87.     A Schedule K1 constitutes an "information return" within the meaning of 26 U.S.C. § 7434.

88.     As more fully described above, in 2024, Shevchenko, Fursov, Seller Online and/or other Defendant(s) willfully prepared and filed a fraudulent amended 2023 Seller Online Schedule K1 for Syrykh, without Syrykh's knowledge or authorization, to improperly allocate in excess of $455,000 of additional income to Syrykh, causing her substantial tax liability and/or other harm.

89.     Such conduct of Defendants violated applicable tax laws, rules, regulations, and the parties' agreement regarding tax allocation and payment, and entitles Syrykh to recover civil damages from such Defendants under, *inter alia*, 26 U.S.C. § 7434(b), including, without limitation, Syrykh's tax liability, penalties, interest, costs, and attorney's fees.

WHEREFORE, Syrykh respectfully requests judgment in her favor and against the Defendants, jointly and severally: (a) in an amount to be determined at trial, and (b) for costs, interest, attorneys' fees, punitive damages, and such other relief as the Court deems equitable, just and proper.

## COUNT II
## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT,
## FORCED LABOR, 18 U.S.C. § 1589 et seq.
### (Plaintiffs v. Defendants)

90.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as if set forth at length herein.

91.     In connection with the 18 U.S.C. § 1595 venture and/or enterprise described herein ("Venture/Enterprise"), each of the Defendants engaged in, participated in, and conspired with each other and their unnamed co-conspirators, both known and unknown, to engage in forced labor in violation of 18 U.S.C. §§ 1589 et seq., including § 1590 and/or 1593A. Each Defendant joined

the conspiracy and Venture/Enterprise, knowing and agreeing that at least one co-conspirator would engage in at least one overt act in furtherance of the conspiracy and illegally enter into the Venture/Enterprise.

92.     Defendants, individually and together, conspired to and knowingly provided and obtained the labor and services of Plaintiffs by any one of, or by any combination of, the following means: by threats of force; by means of serious harm and/or threats of serious harm, including psychological, financial, and reputational harm to Plaintiffs, sufficiently serious to coerce Plaintiffs into performing and continuing to perform the labor and services, by means of abuse or threatened abuse of law or legal process including the use of, and threats of, fraudulent criminal complaints, vexatious civil litigation, and immigration fraud; and by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if Plaintiffs did not perform such labor or services, that Plaintiffs would suffer serious harm or physical restraint.

93.     Defendants, individually and together, participated in the conspiracy and Venture/Enterprise, knowing or in reckless disregard of the fact that the conspiracy and Venture/Enterprise was engaged in violations of, *inter alia*, 18 U.S.C. § 1589 et seq., and they benefited from their participation in the conspiracy and Venture/Enterprise financially and by receiving other things of value including valuable personal services, funds and other assets not belonging to them, enhanced status and power within the community, and they further believed that by perpetrating the acts alleged herein that they would achieve greater wealth, power, status, and control of the business of Seller Online and/or ALS to which they were not entitled, and psychologically, from their participation in the conspiracy and Venture/Enterprise and their myriad illegal acts in connection with the forced labor activity alleged herein.

94.     As a direct and proximate result of Defendants' violations of 18 U.S.C. §1589 et

seq., including §1590 and §1593A, Plaintiffs have suffered damages recoverable under 18 U.S.C. §1595, including, without limitation, attorney's fees, punitive damages, interest, costs and other sums.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just and proper.

**COUNT III**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. §1962(c) ("RICO")**
**(Plaintiffs v. Defendants)**

95.     Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

96.     18 U.S.C. § 1962(c) states that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

97.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

98.     18 U.S.C. § 1964(c) creates a private right of action for violation of the RICO statute.

99.     As more fully described herein, Shevchenko, Fursov and Seller Online violated 18 U.S.C. § 1343 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations or promises, and each of the Defendants knowingly caused to be transmitted by means of wire communications in interstate commerce, writings, signs, and signals for the purpose of executing the scheme or

artifice, or attempting to do so. Such wire communications included, without limitation, numerous emails, phone calls, Skype and/or other remote technology calls or communications, wire transfers, or electronic document transmissions between 2019 and 2023. The aforementioned fraud was conducted through, *inter alia*, communications by wire for purposes of 18 U.S.C. § 1343, and the Plaintiff(s) reasonably relied on such fraudulent and deceptive communications initiated by Shevchenko, Fursov and Seller Online.

100.    As more fully described herein, Shevchenko, Fursov and Seller Online violated 18 U.S.C. § 1344 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud a financial institution, or to obtain the money and funds under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

101.    The systematic and coordinated scheme of Shevchenko, Fursov and Seller Online involved numerous false and misleading statements, and/or omitted to state material facts when required, in order to fraudulently induce the Syrykh into advancing them money which they used for clandestine illegal purposes, and by defrauding Plaintiffs and financial institutions in connection with this unlawful conduct, all in an effort to convert funds of Plaintiffs held in financial institution(s) for Defendants' improper benefit and with full knowledge that Defendants could not and would not repay such funds.

102.    Shevchenko, Fursov and Seller Online engaged in interstate commerce as a result of their operation of their unlawful business and scheme, and their solicitation and use of such funds was nationwide and international, including, without limitation, in the Commonwealth of Pennsylvania.

103.    Shevchenko, Fursov and Seller Online have each committed numerous predicate acts for violation of the RICO statute, including wire and bank fraud, as more fully described

herein.

104.    The facts, as more fully described above, demonstrate that Shevchenko, Fursov, and Seller Online unlawfully, willfully, knowingly and/or with reckless disregard performed acts and/or omissions, and conducted or participated in the conduct, directly or indirectly, of the business and affairs of Defendants through a pattern of racketeering activity.

105.    Shevchenko, Fursov and Seller Online, in their pattern of racketeering activity, regularly used interstate telephone lines, cellular phones, emails and other Internet transmissions, while engaging in interstate commerce for the purpose of committing wire fraud, bank fraud, and other fraud and deceit, and conspiring to commit wire fraud, bank fraud, and other fraud and deceit, and conspiring to commit wire, bank and other fraud and/or deceit, as described more fully herein and actionable under the RICO statute.

106.    The pattern of racketeering activity for which the Plaintiffs seek legal recourse involves multiple related predicate acts over the course of several years, all constituting wire fraud, bank fraud and other actionable conduct defined by 18 U.S.C. §§ 1343 and 1344, which directly caused financial harm to the Plaintiffs.

107.    As a direct and proximate result of the aforementioned RICO conduct, Plaintiffs have suffered substantial damages, including but not limited to lost profits, business opportunities, and other economic and non-economic damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, in the amount in excess of $75,000.00, plus treble damages under 18 U.S.C. §1964, punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

## COUNT IV
## BREACH OF CONTRACT

**(Plaintiffs v. Defendants)**

108.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as if set forth at length herein.

109.    Defendants' conduct constitutes a breach of multiple agreements between the parties, including, without limitation, the partnership, services, release, indemnification, and tax payment agreements more fully described herein.

110.    Defendants are continuing to violate their contractual and other duties owed to Plaintiffs.

111.    As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages, which include, but are limited to, loss of funds and other assets, loss of entity ownership and management rights and powers, loss of valuable business and opportunities, loss of profits and future profits, damage to reputation, and/or loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just and proper.

### COUNT V
### FRAUD
**(Plaintiffs v. Defendants)**

112.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth fully herein.

113.    In furtherance of their fraudulent scheme as more fully set forth above, the Defendants made numerous misrepresentations and omissions to Plaintiffs and/or others.

114.    Plaintiffs reasonably relied on Defendants' material misrepresentations which resulted in injury to Plaintiffs.

115.    As stated more fully herein, Defendants knowingly and intentionally made numerous material misrepresentations to fraudulently induce Plaintiffs to engage in business and transactions with Defendants, which misrepresentations and omissions include, but are not limited to: that Seller Online would be operated lawfully and profitably for the benefit of both members, Shevchenko and Syrykh; that undistributed member profits held in Seller Online's bank account would be used to pay member personal taxes; and that the sale agreement in which Syrykh would sell her 51% ownership of Seller Online to Shevchenko would include release/indemnification language in favor of Syrykh.

116.    Plaintiffs aver that the aforesaid misrepresentations and omissions were material, false, and knowingly and intentionally made by the Defendants to the Plaintiffs and/or others with the intent to deceive.

117.    Plaintiffs believe and therefore aver that, at the time of the misrepresentations and omissions, the Defendants knew, or recklessly disregarded the fact, that these misrepresentations and omissions would mislead the Plaintiffs and/or others, and that Plaintiffs and/or others would act in reliance upon the misrepresentations and omissions.

118.    Plaintiffs reasonably relied upon these material misrepresentations and omissions.

119.    As a direct and proximate result of such reasonable reliance, the Plaintiffs have suffered substantial monetary and non-monetary damages, including but not limited to loss of business ownership, lost profits, lost business opportunities, and additional tax liability, interest, and/or penalties.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally,

in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just and proper.

## COUNT VI
## DECLARATORY JUDGMENT
### (Plaintiffs v. Defendants)

120.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

121.    Pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 et seq. (the "Act"), a plaintiff may seek a declaratory judgment relating to, *inter alia*, her contractual and/or other legal rights and obligations.

122.    As more fully described above, the aforementioned December 28, 2023 membership interest sale agreement is void and/or voidable.

123.    Shevchenko and Fursov never made any direct payment to Syrykh on account of the purchase price under the December 28, 2023 membership interest sale agreement.

124.    Shevchenko and Fursov breached their duties and obligations to Syrykh in connection with the December 28, 2023 membership interest sale agreement.

125.    Consequently, Plaintiff(s) hereby request this Honorable Court to enter a declaratory judgment that, *inter alia*:

(a)    The December 28, 2023 membership interest sale agreement is null and void, and Syrykh is the valid and rightful owner of a 51% membership interest in Seller Online and the proportionate share of all the assets and profits therefrom which should have inured to Syrykh, but which were converted and diverted by Defendants;

(b)     Upon the reversion of a 51% membership interest in Seller Online to Syrykh, Defendants lack standing for certain of their actions and/or omissions; and

(c)     Defendants are enjoined from possessing and/or controlling, and directed to provide a detailed accounting of, return and transfer, any and all funds, assets, opportunities and things obtained from Syrykh, Seller Online, ALS and their businesses which Defendants unlawfully and improperly took;

(d)     Syrykh, solely and/or under the supervision of the temporary and/or special receiver and/or the Court, shall have all rights and powers to manage, operate, market, sell, wind up, liquidate and dissolve Seller Online; and

(e)     Defendants have no right, title, or interest in the business, funds, assets, and/or equity securities of ALS;

(f)     Syrykh cannot be deprived of her rights in respect to Seller Online, ALS, and their businesses and assets, including the funds currently held by ALS.

WHEREFORE, Plaintiff(s) respectfully request:

(a)     judgment in favor of them and against Defendants,

(b)     an order of court declaring that, *inter alia*,

1.     The December 28, 2023 membership interest sale agreement is void and/or voidable *ab initio* at the election of Syrykh and, upon such election to void, that Syrykh is the valid and rightful owner of a 51% membership interest in Seller Online and the proportionate share of all the assets and profits therefrom which should have inured to Syrykh, but which were converted and diverted by Defendants in

violation of the parties' agreement and/or applicable law;

2.      Upon the reversion of a 51% membership interest in Seller Online to Syrykh, Defendants lack standing for certain of their claims in this action; and

3.      Defendants are enjoined from possessing and/or controlling, and directed to return and transfer, any and all funds, assets, opportunities and things obtained from Syrykh, Seller Online, ALS and their businesses which Defendants unlawfully and improperly took, including but not limited to a detailed accounting of all such funds, assets, and opportunities;

4.      Syrykh, solely and/or under the supervision of the temporary and/or special receiver and/or the Court, shall have all rights and powers to manage, operate, market, sell, wind up, liquidate and dissolve Seller Online; and

5.      Defendants have no right, title, or interest in the business, funds, assets, and/or equity securities of ALS;

6.      Syrykh cannot be deprived of her rights in respect to Seller Online, ALS, and their businesses and assets, including the funds currently held by ALS.

(c)      Plaintiff(s) are entitled to an award of attorney's fees, costs, interest, punitive damages against Defendants, jointly and severally; and

(d)      and such other relief as the Court deems equitable, just and proper.

**COUNT VII**
**CIVIL CONSPIRACY**

**(Plaintiffs v. Defendants)**

126.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

127.    Shevchenko and Fursov, together with others, formed and operated a malicious combination with a common purpose to injure Plaintiffs by performing unlawful acts and violating the contractual, statutory and common law rights of Plaintiffs as described above, including, but not limited to, taking control of and freezing them out of the online fulfillment business, forcing them to engage in forced labor in violation of 18 U.S.C. §1589, converting their funds and business opportunities, and otherwise harassing and abusing them.

128.    The foregoing conduct of Shevchenko and Fursov was performed with the specific intent to injure Plaintiffs, and was without justification, privilege, or legal excuse.

129.    Shevchenko and Fursov each engaged in overt unlawful acts that violated the contractual, statutory, and common law rights of Plaintiffs as described above, causing actual harm to them.

130.    By virtue of the formation and operation of this conspiracy by Shevchenko and Fursov and others, and as a consequence of the above-described wrongful acts and conduct and the harm and injury caused to Plaintiffs thereby, each of Shevchenko and Fursov is a participant in this conspiracy and is liable as a joint tortfeasor for each and every one of the above-described acts committed by each Defendant/co-conspirator.

131.    As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages including, *inter alia*, loss of LLC management and ownership rights, loss of funds, loss of valuable business opportunities, loss of past and future profits, and loss of goodwill, in an amount to be determined at trial, which damages

are ongoing and continue unabated at the time of filing of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Shevchenko, Fursov and other co-conspirators, jointly and severally, in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive relief and/or equitable relief, and such other relief as the Court deems equitable, just and proper.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS RELATIONS**
**(Plaintiffs v. Defendants)**

132.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

133.    Plaintiffs have or had valid and continuing past, present, and/or prospective contracts and business relationships with respect to their business, funds, and other assets.

134.    Defendants knew, or reasonably should have known, and continue to know of the existence of these contracts and business relationships.

135.    Despite this knowledge, Defendants intentionally and improperly interfered with these contracts and business relationships, as described herein.

136.    Defendants' actions were and are intentional and malicious, without privilege, justification, or legal excuse, and were undertaken for an improper purpose or by improper means.

137.    As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages including but not limited to loss of value, loss of funds or use of funds, loss of valuable business and opportunities, loss of profits and future profits, damage to reputation, and/or loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally,

in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just and proper.

**COUNT IX**
**CONVERSION**
**(Plaintiffs v. Defendants)**

138.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

139.    As described above, Defendants willfully and intentionally misappropriated and converted the specifically earmarked funds and other property of Plaintiff(s) for their personal gain and without privilege, justification, permission, accounting to Plaintiff(s), or reimbursement to Plaintiffs.

140.    By failing and refusing to account for or reimburse the funds and other property of Plaintiffs, Defendants wrongfully exerted dominion over the property of Plaintiffs and their rights.

141.    As a direct and proximate result of the aforementioned conversion of Defendants, Plaintiffs have been harmed.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, in the amount in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just, and proper.

**COUNT X**
**UNJUST ENRICHMENT**
**(Plaintiffs v. Defendants)**

142.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

27

143.     At all material times hereto, Defendants knowingly and substantially benefited from the ill-gotten gains of their systematic, fraudulent, illegal, and oppressive scheme, receiving benefits having estimated values in the six or seven figures, through their wrongful conduct as more fully set forth above.

144.     As a result, Defendants have been unjustly enriched at the expense of Plaintiffs, and it would be unconscionable for Defendants to retain such benefits without compensating Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, in excess of $75,000.00, plus costs, interest, attorneys' fees, punitive damages, injunctive and/or other equitable relief, and such other relief as the Court deems equitable, just and proper.

### COUNT XI
### DETRIMENTAL RELIANCE/PROMISSORY AND EQUITABLE ESTOPPEL
### (Plaintiffs v. Defendants)

145.     Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

146.     Defendants made one or more promises, statements, actions and/or omissions to Plaintiffs, as more fully set forth herein.

147.     Defendants reasonably expected that such promises, statements, actions and/or omissions would induce action on the part of Plaintiffs, including, but not limited to, the coerced and uncompensated labor services of Kuznietsova in violation of 18 U.S.C. § 1589, and in fact they did reasonably act upon such promises, statements, actions and/or omissions, as more fully set forth herein.

148.     Such promises and statements should be enforced against the Defendants in order to avoid injustice to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request: (a) judgment in their favor and against Defendants, (b) an order declaring that such promises and statements shall be specifically enforced in order to avoid injustice; (c) injunctive and/or other equitable relief; and (d) attorney's fees, punitive damages, interest, costs and such other relief as the Court deems equitable, just and proper.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs v. Shevchenko and Fursov)

149.    Plaintiffs hereby incorporate by reference all paragraphs as though set forth fully at length herein.

150.    Shevchenko and Fursov knew that their conduct as described above would cause severe emotional distress to Kuznietsova, or acted with reckless indifference to the probability that their conduct would cause severe emotional distress.

151.    As a direct and proximate result of Shevchenko's and Fursov's outrageous conduct, Kuznietsova experienced severe emotional distress as set forth more fully above.

152.    Such emotional distress includes severe depression, acute anxiety, chronic insomnia, frequent tearfulness, persistent anger, mood disturbances, profound feelings of betrayal, inability to concentrate, and physical manifestations of stress, all of which required medical treatment and professional counseling.

153.    Shevchenko's and Fursov's actions toward Kuznietsova were not authorized by Kuznietsova.

154.    Shevchenko's and Fursov's actions toward Kuznietsova were extreme and outrageous in character, went beyond all possible bounds of decency, and are to be regarded as atrocious and utterly intolerable in a civilized society.

155.    Shevchenko's and Fursov's actions were outrageous in that they committed

wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence, and/or reckless indifference to the rights of Kuznietsova.

WHEREFORE, Kuznietsova respectfully requests: (a) judgment in her favor and against Shevchenko and Fursov, jointly and severally; and (b) punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

**COUNT XIII**
**PIERCING THE CORPORATE/LLC VEIL**
**(Plaintiffs v. Entity Defendants)**

156.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

157.    Upon information and belief, Shevchenko and Fursov totally dominate and control the Entity Defendants through their unlawful and/or improper conduct described above.

158.    Upon information and belief, Shevchenko and Fursov formed the Entity Defendants to perpetrate a fraud upon Plaintiffs by, *inter alia*, siphoning funds, opportunities and assets of Seller Online for their own personal gain, as more fully described herein.

159.    Defendants have failed to adhere to entity formalities with respect to the operations of Entity Defendants and/or their other entities engaged in this scheme by, *inter alia*, commingling funds of their own and such affiliates, causing such entities to be insolvent or undercapitalized, causing such entities to be alter egos and/or shams and/or used to commit fraud and/or other unlawful conduct, as more fully described above.

160.    Upon information and belief, Defendants have abused the entity form of each Entity Defendant such that its corporate/entity veil should be pierced and/or disregarded, thus causing all the Defendants to become personally, jointly, and severally liable for the debts and obligations of

any and all the other Defendants including, without limitation, for the recovery of all funds, opportunities and assets siphoned, converted and diverted through such entities yet to be discovered.

161.    Based upon the foregoing, Defendants should be held jointly and severally liable for all debts and liabilities of Seller Online and each other such entity used in their fraudulent scheme, and vice versa, because those entities are mere alter-egos of the individual Defendants and were used by the individual Defendants to perpetrate fraud and other unlawful conduct upon Plaintiffs.

WHEREFORE, Plaintiffs respectfully request: (a) judgment in their favor and against the Defendants, jointly and severally, (b) piercing of the corporate/entity veils of Entity Defendants and all other entities used in the fraudulent scheme so that all the Defendants and such fraudulent scheme entities shall be jointly and severally liable to Plaintiffs in this action; and (c) punitive damages, costs, interest, attorneys' fees and such other relief as the Court deems equitable, just and proper.

Respectfully Submitted,

**TINOVSKY LAW FIRM**

Dated: December 26, 2025                By: /s/ Vlad Tinovsky
                                        Vlad Tinovsky, Esquire
                                        5 Neshaminy Interplex
                                        Suite 205
                                        Trevose, PA 19053
                                        P: 215-568-6862
                                        E: vtinovsky@tinovskylaw.com
                                        *Attorney for Plaintiffs*

# EXHIBIT A

 Gmail

**Anna Syrykh <anutta781@gmail.com>**

---

## Fwd: 101000
1 message

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>
To: Anna Syrykh <anutta781@gmail.com>

Tue, Oct 12, 2021 at 6:32 AM

101000 usd

просьба реквизиты брать из файла ворд

Beneficiary Bank: Bank Of Taizhou Co.,Ltd.
Bank Address: No. 699, Shifu Dadao, Taizhou,
Zhejiang,318000, China
SWIFT BIC: TZBKCNBTXXX
Account: ██████0060
Name: YIWU LEILANG TRADE CO., LTD
Address: ROOM 301 UNIT 5 BUILDING, 8 THE 4TH SECTION OF THE FUTIAN
,DISTRICT THE CHOUCHENG STREET ,YIWU ZHEJIANG,CHINA
PAYMENT FOR GOODS ACC INVOICE 684234 DD.: 12.10.21

--
С уважением,
Татьяна Шевченко

---

**2 attachments**

 **4_5992062484154944248.docx**
13K

**12.10.21 YLT 101000.xlsm**
20K

# EXHIBIT B

---------- Forwarded message ---------
From: **Maria Murillo** <Maria.Murillo@sriplaw.com>
Date: Fri, Aug 9, 2024 at 4:32 PM
Subject: RE: Important information about your PayPal account. (Ref ID - PP-L-475559173349)
To: Atlantic Solutions <atlantic.logistic.solution.inc@gmail.com>
Cc: Angela Nieves <angela.nieves@sriplaw.com>, Campbell Miller <Campbell.Miller@sriplaw.com>

Good afternoon Oksana,

Your PayPal account is associated with a defendant in a counterfeiting case filed in federal court in Florida. See attached complaint.

This defendant has an Etsy store (Heritage Garage) that is apparently using the PayPal account to collect payments. We need to understand your relationship to this defendant store, what services you provide them, and why Etsy has linked your PayPal account to this defendant. Please advise.

Best,



**Florida | Los Angeles | New York | Atlanta | Nashville | Medellin**
**María Murillo**
Anti-Counterfeiting Client Service Liaison / Lawyer
21301 Powerline Road, Suite 100
Boca Raton, Florida 33433
Main: (561) 404-4350
**www.sriplaw.com**

# EXHIBIT C

## ACQUISITION OF MEMBERSHIP INTEREST
## SELLER ONLINE LLC

THIS AGREEMENT is made this *15* day of *September* 2022 by and between Anna Syrykh, who has a mailing address at 346 Glen Meadow Rd, Richboro, PA 19053, referred to hereinafter as "Seller," and Tetyana Shevchenko, who also has a mailing address at 305 Somers Ave, Feasterville, PA 19053, and who is referred to hereinafter as "Buyer."

WHEREAS, Seller is the owner of fifty-one percent (51%) of the membership interest in Seller Online LLC, a Pennsylvania limited liability company with a mailing address at 635 Somers Ave, Feasterville, PA 19053 (hereinafter referred to as the "LLC"); and

WHEREAS, Buyer is the owner of the remaining forty-nine percent (49%) of the membership interest in the LLC; and

WHEREAS, Seller desires to transfer to Buyer, and Buyer desires to acquire from Seller, two percent (2%) of Seller's membership interest in the LLC, with that interest transferred to Buyer on the terms and conditions contained in this contract; and

NOW, THEREFORE, in consideration of the mutual promises and conditions contained in this contract, the parties hereto agree as follows:

### ACQUISITION OF MEMBERSHIP INTEREST

1. Subject to the terms and conditions of this agreement, Seller agrees to transfer and assign to Buyer, and Buyer agrees to acquire, upon execution of this contract, two percent (2%) of the membership interest in the LLC. At the signing hereof, Seller shall deliver to Buyer a certificate or note evidencing the transfer, duly endorsed to Buyer. Upon execution, and from time to time after execution, Seller shall execute and deliver other documents and instruments, and take other actions, as Buyer may reasonably request, in order to more fully vest in Buyer her additional two percent (2%) of the right, title, and interest in the LLC, and every other equivalent right, title, interest, claim, or demand of any kind that Seller may have in, to, or on any of the properties, assets, or businesses of the LLC.

### PURCHASE PRICE AND ASSOCIATED COVENANTS

2. The purchase price is one hundred ninety two thousand dollars ($192,000), payable by cash or bank check in three annual installments, with each payment due on the anniversary date of this agreement beginning in 2023.

### SELLER'S REPRESENTATIONS REGARDING THE LLC

3. Seller represents and warrants that she has good, absolute, and marketable title to two percent (2%) of the LLC membership interest being transferred to Buyer, free and clear of all liens, claims, encumbrances, and restrictions of every kind that would otherwise be unknown to Buyer, and Seller has the complete and unrestricted right, power, and authority to transfer and assign her membership interest.

4. Seller represents and warrants that the LLC is authorized to transfer two (2%) of its interest.

5. Seller represents and warrants that there are no outstanding options, contracts, commitments, warranties, agreements, or other rights of any character affecting or relating in any manner to the issuance of the LLC's membership interest or entitling anyone to acquire the LLC's membership interest, any of which would be unknown to Buyer.

6. Seller represents and warrants that the financial statements reviewed by Buyer, specifically the

balance sheet of the LLC, as of December 31, 2021, and the related statement of income and retained earnings of the LLC for the year ended December 31, 2021, are in accordance with the books and records of the LLC and fairly represent the financial condition of the LLC at such dates and the results of its operations for the periods specified.

7. Seller represents and warrants that the LLC, since the balance sheet date: (a) has not incurred any obligations or liabilities except current liabilities in the ordinary course of business; (b) has not discharged or satisfied any liens or encumbrances, or paid any obligations or liabilities, except current balance sheet liabilities and current liabilities incurred since the balance sheet date in the ordinary course of business, or, in the alternative, separately disclosed to Buyer; (c) has not mortgaged, pledged, or subjected to lien, encumbrance, or charge any of its assets except from inventory in the ordinary course of business; (d) has not suffered any damage, destruction, or loss (whether or not covered by insurance) materially affecting its properties, business, or prospects; (e) has not waived any rights of substantial value; and (f) has not entered into any transaction other than in the ordinary course of business, any of the foregoing of which would be unknown to Buyer.

8. Seller represents and warrants that the LLC has duly filed all federal, state, and local tax returns required to be filed by the LLC and that, subject to any exceptions in this contract, the LLC has paid all federal, state, and local taxes required to be paid with respect to the periods covered by the returns.

9. Seller represents and warrants that to the best of her knowledge, there are no lawsuits or administrative proceedings pending or threatened against the LLC, which would be unknown to Buyer.

10. Seller represents and warrants that except as disclosed herein, the LLC is not a party to, or otherwise bound by any of the following kinds of contracts: (a) any written or oral contract not made in the ordinary course of business; (b) any employment or consultant contract not terminable at will without cost or other liability; (c) any bonus, pension, profit sharing, retirement, share or membership interest purchase, stock option, hospitalization, group insurance, or similar employee benefit plan; or (d) any real or personal property lease, as lessor or lessee, any of the foregoing of which would be unknown to Buyer.

11. Seller represents and warrants that the LLC has in all respects performed all obligations required to be performed to date and is not, subject to any exceptions in this contract, in material default in any respect under any of the contracts, agreements, documents, or other commitments to which it is a party or by which it is otherwise bound or affected, and that all parties having contracts with the LLC are in material compliance and are not in material default under their respective contracts.

12. Seller represents and warrants that the respective books of account and minute books of the LLC are complete and correct and reflect all those transactions involving the LLC's business that properly should have been set forth in those books.

13. Seller represents and warrants that neither the LLC nor Seller will be obligated in any way for any commission, fee, or other remuneration to any finder, broker, or the like employed by any party in connection with this contract or its negotiation, execution, or performance.

## BUYER'S OBLIGATIONS

14. The obligation of Buyer to consummate this contract is subject to and conditioned on the satisfaction, at or prior to the signing hereof, of all of the applicable terms and conditions of this contract to be complied with and performed by Seller.

2

## REPRESENTATIONS AND WARRANTIES

15. All statements of fact contained in any certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this contract shall be deemed representations and warranties by Seller under this contract.

## INDEMNIFICATION

16. Each party agrees to indemnify and hold harmless the other party from any and all loss resulting from any misrepresentation or breach of warranty made herein. Seller agrees to indemnify and hold Buyer harmless from any and all claims against Buyer resulting from the acts or omissions of the LLC prior to the signing hereof. Buyer in turn agrees to indemnify and hold Seller harmless from any and all claims against Seller resulting form the acts or omissions of Buyer and the LLC after the signing hereof.

## EXPENSES

17. Each party shall bear all expenses incurred by it in connection with this contract and in the consummation and preparation for the transaction contemplated in this contract.

## ASSIGNMENT

18. Neither this contract nor any right created by this contract shall be assignable by either party without the prior written consent of the other. Nothing in this contract is intended to confer on any person other than the parties and their successors, any rights or remedies under or by reason of this contract.

## NOTICE

19. Any notice, communication, request, reply, or advice (collectively "Notice") shall be sent to:

**SELLER**
Anna Syrykh
346 Glen Meadow Rd
Richboro, PA 18954

**BUYER**
Tetyana Shevchenko
305 Somers Ave
Feasterville, PA 19053

## HEADINGS

20. Headings contained in this contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this contract.

## COUNTERPART EXECUTION

21. This contract may be executed in four or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## PARTIES IN INTEREST

22. All of the terms and provisions of this contract shall be binding on and inure to the benefit of and be enforceable by Buyer and Seller, along with their heirs, executors, administrators, and assigns.

## INTEGRATED CONTRACT

23. This contract constitutes the entire agreement between the parties, and there are no agreements, understandings, restrictions, warranties, or representations between the parties other than those set forth or provided for in this contract.

## CHOICE OF LAW

24. It is the intention of the parties that the laws of the Commonwealth of Pennsylvania should govern the validity of this contract, the construction of its terms, and the interpretation of the rights and

3

duties of the parties.

Dated on the day and date first above written.

SELLER

SELLER ONLINE LLC

By: _____
    Name: Anna Syrykh
    Title: Member

BUYER

SELLER ONLINE LLC

By: _____
    Name: Tetyana Shevchenko
    Title: Member

4

# EXHIBIT D

# Seller Online LLC
## Balance Sheet
### As of November 30, 2023

|  | Nov 30, 23 |
|---|---|
| **ASSETS** |  |
| Current Assets |  |
| Checking/Savings |  |
| BoA #6748 | 330,199.65 |
| Citizens Bank #3950 | 1,149,111.15 |
| Citizens Bank #6153 | 1,065,645.02 |
| Paypal | 287,475.95 |
| **Total Checking/Savings** | 2,832,431.77 |
| Accounts Receivable |  |
| Accounts Receivable | 227,029.00 |
| **Total Accounts Receivable** | 227,029.00 |
| **Total Current Assets** | 3,059,460.77 |
| Fixed Assets |  |
| 10071 Sandmeyer Lane | 2,655,840.21 |
| Accumulated Depreciation | -160,678.00 |
| Building | 744,926.00 |
| Equipment | 8,000.00 |
| Leasehold Improvements | 86,065.28 |
| Nissan NV200 | 26,556.00 |
| **Total Fixed Assets** | 3,360,709.49 |
| Other Assets |  |
| Inventory | 775,024.70 |
| **Total Other Assets** | 775,024.70 |
| **TOTAL ASSETS** | 7,195,194.96 |
| **LIABILITIES & EQUITY** |  |
| Liabilities |  |
| Current Liabilities |  |
| Accounts Payable |  |
| Accounts Payable | 2,957,079.87 |
| **Total Accounts Payable** | 2,957,079.87 |
| Other Current Liabilities |  |
| Fed & FICA | 4,532.20 |
| Local EIT | 575.72 |
| PA SUI | 54.49 |
| PA Wage | 1,210.41 |
| Phila Wage | 379.86 |
| **Total Other Current Liabilities** | 6,752.68 |
| **Total Current Liabilities** | 2,963,832.55 |
| **Total Liabilities** | 2,963,832.55 |
| Equity |  |
| Retained Earnings | 2,412,078.95 |
| Shareholder Distribution T | -5,183.00 |
| Net Income | 1,824,466.46 |
| **Total Equity** | 4,231,362.41 |
| **TOTAL LIABILITIES & EQUITY** | 7,195,194.96 |

No assurance is being provided by an accountant

# EXHIBIT E

## SALE OF MEMBERSHIP INTEREST
## SELLER ONLINE LLC

*A.S.*

*T.S.*

THIS AGREEMENT is made effective as of the 31st Day of December, 2023 by and between Anna Syrykh, a resident of 346 Glen Meadow Road, Richboro, PA 18954, referred to hereinafter as "Seller," and Vasyl Fursov, a resident of 200 Thanet Circle, #119, Princeton, NJ 08540, along with Tetyana Shevchenko, also resident at the preceding address, and who are referred to hereinafter as "Buyers," with each being an individual "Buyer."

WHEREAS, Seller is the owner of fifty-one percent (51%) of the membership interest in Seller Online LLC, a Pennsylvania limited liability company with a business address at 635 Somers Avenue, Feasterville-Trevose, PA 19053 (hereinafter referred to as the "LLC"); and

WHEREAS, Seller desires to transfer to Buyers, and Buyers desire to acquire from Seller, all of Seller's membership interest in the LLC, with that interest transferred to Buyers on the terms and conditions contained in this contract; and

WHEREAS, pursuant to the above transfer, Buyer Vasyl Fursov will receive forty-nine percent (49%) of the membership interest in the LLC, and Buyer Tetyana Shevchenko will receive two percent (2%) of the membership interest in the LLC; and

NOW, THEREFORE, in consideration of the mutual promises and conditions contained in this contract, the parties hereto agree as follows:

## ACQUISITION OF MEMBERSHIP INTEREST

1. Subject to the terms and conditions of this agreement, Seller agrees to transfer and assign to Buyers, and Buyers agree to acquire, upon execution of this contract, fifty-one percent (51%) of the membership interest in the LLC. At the signing hereof, Seller shall deliver to Buyers a certificate or note evidencing the transfer, duly endorsed to Buyers. Upon execution, and from time to time after execution, Seller shall execute and deliver other documents and instruments, and take other actions, as Buyers may reasonably request, in order to more fully vest in Buyers fifty-one percent (51%) of the right, title, and interest in the LLC, and every other equivalent right, title, interest, claim, or demand of any kind that Seller may have in, to, or on any of the profits, assets, or businesses of the LLC, all of which shall remain the property of the LLC, and regardless of whether any of the same were generated, acquired, or arose during the time of Seller's ownership of her interest in the LLC.

In furtherance of the above, Seller shall, upon the execution of this agreement or within five (5) calendar days afterwards, provide Buyers specifically with the following, which is not an exhaustive list: (1) keys to the LLC business office; (2) passcode to the security and alarm system at the LLC business office; (3) hard copies of all LLC contracts, unless such copies either do not exist or cannot be provided in hard copy form, in which case electronic copies must be provided; (4) passwords for all LLC e-mail accounts; (5) passwords for all LLC operating, bank, and vendor accounts, as applicable; (6) complete contact information for all LLC members, officers, and service providers; and (7) personnel files for all LLC employees.

## PURCHASE PRICE

2. The purchase price is seven hundred thousand dollars ($700,000), payable by cash or bank check upon the execution of this agreement. Both Buyers and Seller have had the opportunity to discuss the suitability of this purchase price with their advisors, including but not limited to any valuation experts, and all agree that the foregoing amount is mutually acceptable and the sole compensation that Seller shall be entitled to in connection with the sale of her membership interest.

## SELLER'S REPRESENTATIONS REGARDING THE LLC

3. Seller represents and warrants that she has good, absolute, and marketable title to fifty-one percent (51%) of the LLC membership interest being transferred to Buyers, free and clear of all liens, claims, encumbrances, and restrictions of every kind, and Seller has the complete and unrestricted right, power, and authority to transfer and assign her membership interest.

4. Seller represents and warrants that the LLC is authorized to transfer fifty-one percent (51%) of its membership interest.

5. Seller represents and warrants that there are no outstanding options, contracts, commitments, warranties, agreements, or other rights of any character affecting or relating in any manner to the issuance of the LLC's membership interest or entitling anyone to acquire the LLC's membership interest.

6. Seller represents and warrants that the financial statements reviewed by Buyers, specifically the balance sheet of the LLC, as of December 31, 2022, and the related statement of income and retained earnings of the LLC for the year ended December 31, 2022, are in accordance with the books and records of the LLC and fairly represent the financial condition of the LLC at such dates and the results of its operations for the periods specified.

7. Seller represents and warrants that the LLC, since the balance sheet date: (a) has not incurred any obligations or liabilities except current liabilities in the ordinary course of business; (b) has not discharged or satisfied any liens or encumbrances, or paid any obligations or liabilities, except current balance sheet liabilities and current liabilities incurred since the balance sheet date in the ordinary course of business, or, in the alternative, separately disclosed to Buyers; (c) has not mortgaged, pledged, or subjected to lien, encumbrance, or charge any of its assets except from inventory in the ordinary course of its business; (d) has not suffered any damage, destruction, or loss (whether or not covered by insurance) materially affecting its properties, business, or prospects; (e) has not waived any rights of substantial value; and (f) has not entered into any transaction other than in the ordinary course of business.

8. Seller represents and warrants that the LLC has duly filed all federal, state, and local tax returns required to be filed by the LLC and that, subject to any exceptions in this contract, the LLC has paid all federal, state, and local taxes required to be paid with respect to the periods covered by the returns.

9. Seller represents and warrants that to the best of her knowledge, there are no lawsuits

2

or administrative proceedings pending or threatened against the LLC.

10. Seller represents and warrants that except as may be separately disclosed herein, the LLC is not a party to, or otherwise bound by any of the following kinds of contracts: (a) any written or oral contract not made in the ordinary course of business; (b) any employment or consultant contract not terminable at will without cost or other liability; (c) any bonus, pension, profit sharing, retirement, share or membership interest purchase, stock option, hospitalization, group insurance, or similar employee benefit plan; or (d) any real or personal property lease, as lessor or lessee.

11. Seller represents and warrants that the LLC has in all respects performed all obligations required to be performed to date and is not, subject to any exceptions in this contract, in material default in any respect under any of the contracts, agreements, documents, or other commitments to which it is a party or by which it is otherwise bound or affected, and that all parties having contracts with the LLC are in material compliance and are not in material default under their respective contracts.

12. Seller represents and warrants that the respective books of account and minute books of the LLC are complete and correct and reflect all those transactions involving the LLC's business that properly should have been set forth in those books.

13. Seller represents and warrants that neither the LLC nor Seller will be obligated in any way for any commission, fee, or other remuneration to any finder, broker, or the like employed by any party in connection with this contract or its negotiation, execution, or performance.

14. Seller represents and warrants that as of the date of this agreement, she has completed, executed, and mailed Internal Revenue Service Form 8822-B, *Change of Address and Responsible Party*, has named in that form Tetyana Shevchenko as the new responsible party for the LLC, and has provided Buyers with a copy of that submitted form.

## BUYERS' OBLIGATIONS

15. The obligation of Buyers to consummate this contract is subject to and conditioned on the satisfaction, at or prior to the signing hereof, of all of the applicable terms and conditions of this contract to be complied with and performed by Seller.

Notwithstanding the foregoing, Buyers hereby agree that promptly after their acquisition of the membership interest from Seller, the LLC shall hire Seller as an employee for a reasonable period of time enough to permit Buyer to fully familiarize himself with the LLC's operations, which shall in no event be for less than one (1) year. During this period, Seller's monthly net salary shall be eight thousand dollars ($8,000), and if she elects to participate in the LLC's health insurance plan (if any), the LLC shall pay Seller's employee premium for the same. After the aforementioned period has elapsed, Seller and the LLC may, if desired, prepare and execute a separate employment agreement reflecting the above and any alterations thereto.

Buyers hereby also agree that after their acquisition of the membership interest from

3

Seller, and at an appropriate date to be separately agreed on by the parties, the LLC shall fully reimburse Seller for all federal and state income taxes paid and payable by Seller in her 2023 tax year arising exclusively out of the income allocable to her in connection with her ownership of the LLC membership interest in that year, as reflected on Seller's final Schedule K-1 issued by the LLC. Seller shall not be entitled to any further reimbursement from the LLC, to any of the LLC's profits (whether accrued or to be earned), or to any additional compensation otherwise (outside of the purchase price) from the Buyers or the LLC whatsoever.

## SELLER'S OBLIGATIONS

16. In addition to other Seller obligations specified in this agreement, during Seller's initial term of employment with the LLC, she shall not, directly or indirectly, in any manner whatsoever, engage in any capacity with any business competitive with the LLC's current lines of business or any business then engaged in by the LLC, any of its subsidiaries, or any of its affiliates, whether for her own benefit or for the benefit of any person or entity other than the LLC or any subsidiary or affiliate of the LLC. Furthermore, during that term of employment, Seller shall not solicit or encourage any employee, vendor, independent contractor, or client of the LLC to leave or terminate their relationship with the LLC for any reason.

## REPRESENTATIONS AND WARRANTIES

17. All statements of fact contained in any certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this contract shall be deemed representations and warranties by Seller under this contract.

## INDEMNIFICATION

18. Each party agrees to indemnify and hold harmless the other party from any and all loss resulting from any misrepresentation or breach of warranty made herein. Seller agrees to indemnify and hold Buyers harmless from any and all claims against Buyers resulting from the acts or omissions of the LLC prior to the signing hereof. Buyers in turn agree to indemnify and hold Seller harmless from any and all claims against Seller resulting form the acts or omissions of Buyers and the LLC after the signing hereof.

## EXPENSES

19. Each party shall bear all expenses incurred by it in connection with this contract and in the consummation and preparation for the transaction contemplated in this contract.

## ASSIGNMENT

20. Neither this contract nor any right created by this contract shall be assignable by either party without the prior written consent of the other. Nothing in this contract is intended to confer on any person other than the parties and their successors any rights or remedies under or by reason of this contract.

## NOTICE

21. Any notice, communication, request, reply, or advice (collectively "Notice") shall be sent to:

4

**SELLER**
Anna Syrykh
346 Glen Meadow Road
Richboro, PA 18954

**BUYERS**
Vasyl Fursov
200 Thanet Circle, #119
Princeton, NJ 08540

Tetyana Shevchenko
200 Thanet Circle, #119
Princeton, NJ 08540

## HEADINGS

22. Headings contained in this contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this contract.

## COUNTERPART EXECUTION

23. This contract may be executed in four or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## PARTIES IN INTEREST

24. All of the terms and provisions of this contract shall be binding on and inure to the benefit of and be enforceable by Buyers and Seller, along with their heirs, executors, administrators, and assigns.

## INTEGRATED CONTRACT

25. This contract constitutes the entire agreement between the parties, and there are no agreements, understandings, restrictions, warranties, or representations between the parties other than those set forth or provided for in this contract.

## CHOICE OF LAW

26. It is the intention of the parties that the laws of the Commonwealth of Pennsylvania should govern the validity of this contract, the construction of its terms, and the interpretation of the rights and duties of the parties.

[Signatures page follows]

IN WITNESS WHEREOF, the parties hereto, agreeing to be bound, have set their signatures below.

SELLER                                                    BUYERS

SELLER ONLINE LLC

By: _____               By: _____
    Name: Anna Syrykh                                    Name: Vasyl Fursov
    Title: Member

Date: _12_/_28_/_23_                          Date: _12_/_28_/_2023_

                                              By: _____
                                                  Name: Tetyana Shevchenko

Commonwealth of Pennsylvania
County of _Bucks_                             Date: _12/28/2023_


Signed and sworn to (or affirmed) before me
on _12-28-2023_
by _ANNA SYRYKH,_
_VASYL FURSOV and_
_TETYANA SHEVCHENKO_

Commonwealth of Pennsylvania - Notary Seal
Georgiy V. Tatarintsev, Notary Public
Bucks County
My commission expires May 20, 2027
Commission number 1351891
Member, Pennsylvania Association of Notaries

6